Oscar J. Cahn Corporation v. Commissioner.
Oscar J. Cahn Corp. v. Commissioner
Docket No. 36555.
United States Tax Court
1954 Tax Ct. Memo LEXIS 282; 13 T.C.M. (CCH) 195; T.C.M. (RIA) 54072; March 10, 1954
*282 Martin M. Lore, Esq., for the petitioner. Charles M. Greenspan, Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion The respondent determined the following deficiencies in income, declared value excess profits, and excess profits taxes of the petitioner: Taxable
year
ended
Tax
Deficiency
1/31/46
Income
$ 5,419.64
1/31/46
Declared Value Excess
Profits
703.94
1/31/46
Excess Profits
12,851.52
1/31/47
Income
12,024.88
1/31/48
Income
1,074.47 The fiscal year ended January 31, 1949, is also involved, since the petitioner contests the respondent's reduction of the amount of the net operating loss for that year to be carried back to the fiscal year ended January 31, 1947. The issue is whether the petitioner is entitled to deductions for the fiscal year ended January 31, 1946, 1947, 1948 and 1949, on account of traveling, selling, entertainment, and miscellaneous expenses, as well as Paris office expenses, in excess of the amounts allowed by the respondent. Findings of Fact The petitioner is a corporation organized in 1928 under the laws of the State of New York. Its principal office is located in New York *283 City. Its Federal income, declared value excess profits, and excess profits tax returns, on the accrual basis, were filed with the collector of internal revenue for the third district of New York. All of the petitioner's outstanding capital stock, amounting to $5,000, was owned by Oscar J. Cahn, who controlled its affairs and was its president. The employees of petitioner in the United States consisted of two salesmen, a manager, two stenographers, and two boys. The total salaries for all of the petitioner's employees ranged from $17,000 to $20,000 per year. Since its organization the petitioner has been engaged in the business of importing and selling woolen textiles "for ladies wear." Prior to World War II its business was primarily in foreign fabrics. During World War II, when it could not do business with foreign mills, it purchased domestic fabrics from Lonsdale Fabrics located in Philadelphia, Pennsylvania, and during the years here involved continued to make some purchases from this concern. Its principal sources of foreign fabrics are Tissage de Honnechy and Maurice Legrand & Cie, located in France, and Keddie Gordon Co., Ltd., located in Scotland. Purchases made by petitioner *284 from these and other concerns during the years herein involved were as follows: Domestic
Foreign
Purchases
Purchases
Fiscal year ended Jan. 31, 1946
Lonsdale Fabrics
$183,497.12
Keddie Gordon Co., Ltd.
$ 7,053.45
$183,497.12
$ 7,053.45
Fiscal year ended Jan. 31, 1947
Lonsdale Fabrics
$251,619.42
Keddie Gordon Co., Ltd.
$ 5,363.42
Tissage de Honnechy
3,474.16
Maurice Legrand & Cie
1,103.12
$251,619.42
$ 9,940.70
Fiscal year ended Jan. 31, 1948
Lonsdale Fabrics
$ 82,257.13
Keddie Gordon Co., Ltd.
$ 7,499.78
Tissage de Honnechy
8,147.32
Maurice Legrand & Cie
1,921.61
$ 82,257.13
$17,568.71
Fiscal year ended Jan. 31, 1949
Lonsdale Fabrics
$ 70,522.09
Keddie Gordon Co., Ltd.
$27,093.23
Tissage de Honnechy
14,509.28
Establissements Poullot & Cie
809.82
Bader Diamant, Inc.
1,599.38
Kaplan & Grabois
210.50
$ 70,522.09
$44,222.21
During each of the four years abovementioned, with the exception of the fiscal year ended January 31, 1946, Oscar J. Cahn made two trips to Europe in connection with the business of the petitioner. Each trip lasted approximately nine weeks, the spring trip usually *285 beginning in April and ending in June, and the fall trip beginning in October and ending in December. No one accompanied Cahn on these trips. Their purpose was to "line up" some fabrics to be sold in the United States and to get samples which petitioner's salesmen could exhibit to its customers. During each trip Cahn visited mills in Scotland and France and participated in the designing of various fabrics. On each trip he spent from ten days to two weeks at the mills in Scotland and the remainder of his time in France. While in France he rented a room in a hotel in Paris and paid the rental for that room even though in some weeks, when he was visiting mills in the north of France, he would spend only one, two or three nights in his room. During his absence he incurred lodging expense where the mills were located. During the time he was in Europe Cahn made expenditures from funds of petitioner for transportation, food, lodging, laundry, entertaining, telephone, cable, and gratuities to various individuals with whom he did business. He kept no record of the amounts expended for these items. Records of checks issued by petitioner do show, however, amounts paid to the Cunard Steam-Ship *286 Company for his transportation to and from Europe, for traveler's checks, and to certain persons and concerns to purchase gifts for those with whom petitioner engaged in business. The petitioner maintained an office in Paris, France, where Charles Lemaire was its representative. Lemaire did not devote his time exclusively to petitioner's affairs. After an order was received in the United States, the quantity ordered and the code name of the style and color were cabled to the Paris office. Lemaire then went to the mill involved and placed the order. He cabled back the best delivery and the best price, and watched progress made on the order to see that the mill met the promised delivery date. He was paid a salary by the petitioner, and submitted monthly statements to petitioner covering expenses of the Paris office and his salary. The monthly statements for the years involved were not produced, and Lemaire kept no records to substantiate the amounts claimed for Paris office expenses. During these years petitioner issued some checks payable to Lemaire and forwarded them to him in Paris. He endorsed the checks and returned them to petitioner. Expenses of Paris office, including Lemaire's *287 salary, were paid to him in dollars. If expenses were incurred during period Cahn was in Paris, he would reimburse Lemaire for them with dollars received from petitioner. Some of these expenses were paid in this way. The remaining expenses were paid with dollars mailed by petitioner to Lemaire. During the year ended January 31, 1946, when, because of the war, Cahn made no trip to Europe, he did some traveling to mills manufacturing domestic fabrics located in Philadelphia, Pennsylvania, and in Massachusetts and Rhode Island. A substantial amount of petitioner's sales during each of the fiscal years ended January 31, 1946, 1947, 1948, and 1949 was made in New York City. While Cahn is in Europe petitioner's salesmen do not do much traveling and confine their activities largely to trying to get reorders in New York City. Most of the domestic expense is incurred when Cahn is in the United States after he has returned with the new line. The greater part of the domestic traveling for petitioner was done by Cahn and his brother, Ralph, the longer trips being taken by Ralph. Orders were received by petitioner from customers located in Cincinnati, Chicago, Philadelphia, St. Louis, Cleveland, *288 Omaha, and Los Angeles during the year ended January 31, 1947, and from customers located in Chicago and Los Angeles and vicinity during the years ended January 31, 1948, and January 31, 1949. These orders were procured as the result of visits by petitioner's salesmen to the customers. Petitioner does no showroom business. When a salesman visits a customer he has a sample case weighing from 75 to 100 pounds. Petitioner advances salesmen cash to pay their traveling expenses but they do not give petitioner any report on their expenditures. The amounts claimed by the petitioner in its tax returns for expenses of its Paris office, traveling and entertainment expenses, and miscellaneous expenses, and the amounts allowed and disallowed by the respondent were as follows: Paris Office Expenses
Fiscal Year Ended
January 31,
Claimed
Allowed
Disallowed
1946
$ 3,750.00
$ 3,750.00
1947
9,900.00
$ 2,750.00
7,150.00
1948
9,387.40
2,387.40
7,000.00
1949
10,807.51
807.51
10,000.00
$33,844.91
$ 5,944.91
$27,900.00
Traveling and Entertainment Expenses
1946
$18,818.86
$ 1,866.86
$16,952.00
1947
21,184.63
8,399.63
12,785.00
1948
17,573.56
5,636.56
11,937.00
1949
16,221.46
3,261.46
12,960.00
$73,798.51
$19,164.51
$54,634.00
Miscellaneous Expenses
1946
$ 3,488.41
$ 3,488.41
1947
3,535.47
3,535.47
1948
3,708.76
2,708.76
$ 1,000.00
1949
3,458.61
2,458.61
1,000.00
$14,191.25
$12,191.25
$ 2,000.00
*289 Of the amounts claimed by petitioner for traveling and entertainment expenses for each of the years listed above, the following amounts were claimed for "travel" expense: Fiscal year ended January 31, 1946
$14,119.58
Fiscal year ended January 31, 1947
14,941.50
Fiscal year ended January 31, 1948
15,152.85
Fiscal year ended January 31, 1949
15,182.30 The amount of $14,119.58 was determined by adding the amounts shown on 19 checks issued to Oscar J. Cahn and on 18 checks issued to "Bearer" during the fiscal year ended January 31, 1946. The amount of $14,941.50 was determined by adding the amounts shown on 39 checks issued to "Bearer" to checks issued for travelers' checks for Oscar J. Cahn aggregating $4,022.20 and to checks issued to the Cunard Line Steam-Ship Company aggregating $1,229.30. The amount of $15,152.85 was determined by adding the amounts shown on 38 checks issued to "Bearer" to checks issued to New York Central Railroad for $646.15, to Cunard Line for $1,823.50, to Ralph Cahn for $271.52, and to Transcontinental & Western Airlines for $165.20, and for travelers' checks in the amount of $1,007.50. The amount of $15,182.30 was determined by adding *290 the amounts shown on 37 checks issued to "Bearer" to checks issued to National City Bank for $241.50, to Cunard Line for $1,583, to B. Altman (luggage) $195.20, to New York Central Railroad for $727.10, and to Ralph Cahn for $300. Checks issued by petitioner and charged to entertainment expenses bore the name of the person or concern to whom they were issued. Items purchased for customers with the proceeds of such checks included cigars, cigarettes, liquor, steamer baskets, magazines, lunches, etc. The petitioner incurred ordinary and necessary business expenses for traveling and entertainment in the following amounts: Fiscal year ended January 31, 1946
$ 4,000.00
Fiscal year ended January 31, 1947
12,000.00
Fiscal year ended January 31, 1948
10,000.00
Fiscal year ended January 31, 1949
10,000.00
The petitioner incurred the following ordinary and necessary expenses in connection with the operation of its Paris office: Fiscal year ended January 31, 1946
$1,000.00
Fiscal year ended January 31, 1947
2,750.00
Fiscal year ended January 31, 1948
2,387.40
Fiscal year ended January 31, 1949
3,000.00
The petitioner incurred the following *291 ordinary and necessary miscellaneous expenses in carrying on its business: Fiscal year ended January 31, 1946
$3,488.41
Fiscal year ended January 31, 1947
3,535.47
Fiscal year ended January 31, 1948
3,208.76
Fiscal year ended January 31, 1949
2,958.61
Opinion RAUM, Judge: The evidence introduced by the petitioner in this proceeding to establish that it was entitled to larger deductions for Paris office, for traveling and entertaining, and for miscellaneous expenses than were allowed by the respondent in determining the deficiencies is far from satisfactory. We are convinced that the petitioner incurred expenses for travel and entertaining in the United States during the fiscal year ended January 31, 1946, and in the United States and Europe during the fiscal years ended January 31, 1947, 1948 and 1949. We are not satisfied that its expenditures for travel and entertainment in any of the years equalled the amounts claimed in its returns. The amounts claimed were based to a large extent on checks issued to "Bearer" in each of the years, and petitioner's president, Cahn, who appeared as a witness, attempted to explain the purposes for which these checks were *292 issued. The substance of his testimony was that the proceeds of the checks issued immediately prior to or during the time he was in Europe on business of petitioner were expended by him for food, lodging, transportation, entertaining, gratuities, etc., in carrying on the business of petitioner in Scotland and France, and that the proceeds of such checks issued during petitioner's selling months - January, February, March and July, August and September - were for travel and entertainment expense in the United States. But neither Cahn nor petitioner kept any record of the amounts expended for travel and entertainment in this country or abroad and we are left in considerable doubt, notwithstanding Cahn's testimony, as to whether deductible expenses were actually incurred in the amounts claimed. The burden in this regard is upon petitioner. We are by no means satisfied on this record that the proceeds of the various checks payable to Cahn and to bearer were used in their entirety for purposes for which deductions are allowable. It must be remembered that Cahn was the sole stockholder of petitioner and the situation was such that it could lend itself easily to abuse. Petitioner, of course, *293 is entitled to all deductions allowed by law, but it must present better proof than the loose evidence which it offered in this case to sustain its claim. After a careful consideration of all the evidence, we have found that the amounts of traveling and entertaining expenses incurred by the petitioner in the years involved were in excess of those allowed by the respondent but less than those claimed by petitioner. We have also found that the expenses incurred in the operation of petitioner's Paris office were in excess of those allowed by the respondent for the fiscal years ended January 31, 1946 and 1949. Our finding with respect to the miscellaneous expenses reflects our conclusion that the Commissioner was not justified in eliminating $1,000 for each of the last two years involved. Using our best judgment on the entire record we have restored $500 for each of those years. Decision will be entered under Rule 50.